1

2

3

4

5    UNITED STATES DISTRICT COURT
      DISTRICT OF OREGON
6    MEDFORD DIVISION

7

8    BRITTNEY DOFFING, individually and as
      next of friend to minor plaintiff M.K.,

9              Plaintiff,                          NO.  22-CV-100

10        v.                                       COMPLAINT FOR PERSONAL
                                                   INJURIES
11    META PLATFORMS, INC., formerly known        JURY DEMAND
      as FACEBOOK, INC.; and
12    SNAP, INC.,

13             Defendants.

14

15

16        In these digital public spaces, which are privately owned and tend to be run for
      profit, there can be tension between what's best for the technology company and
17    what's best for the individual user or for society. Business models are often built
      around maximizing user engagement as opposed to safeguarding users' health and
18    ensuring that users engage with one another in safe and healthy ways.  . . .
      Technology companies must step up and take responsibility for creating a safe
19    digital environment for children and youth. Today, most companies are not
      transparent about the impact of their products, which prevents parents and young
20    people from making informed decisions and researchers from identifying
      problems and solutions.

21    *Protecting Youth Mental Health* United States Surgeon General's Advisory
      December 7, 2021
22

23

COMPLAINT FOR PERSONAL INJURIES - 1

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

Plaintiff BRITTNEY DOFFING, on behalf of herself and as next of friend to her minor child, M.K., brings this action against Meta Platforms, Inc., formerly known as Facebook, Inc. ("Facebook"), doing business as Instagram ("Instagram") and Snap, Inc., doing business as Snapchat ("Snapchat" or "Snap") and alleges as follows:

## I.    INTRODUCTION

1.    This product liability action seeks to hold Defendants' products responsible for causing and contributing to burgeoning mental health crisis perpetrated upon the children and teenagers in the United States by Defendants and, specifically, for personal injuries caused to Plaintiff BRITTNEY DOFFING and her minor child M.K. caused by M.K.'s addictive use of and exposure to Defendants' unreasonable dangerous and defective social media products.

2.    On December 7, 2021, the United States Surgeon General issued an advisory cataloging extensive evidence showing a dramatic increase in teen mental health crises including suicides, attempted suicides, and inpatient mental-health admissions. Between 2007 and 2018, for example, suicide rates among youth ages twelve to sixteen in the U.S. increased a staggering 146 percent. Incidence of serious depression and dissatisfaction with life in this age group have likewise increased dramatically.

3.    The most significant and far-reaching change to the lives of young people during this period was the widespread adoption of mobile social media platforms, prominently the Instagram and Snapchat products designed and distributed by Defendants. By 2014, 80 percent of high-school students said they used a social-media platform daily, and 24 percent said that they were online "almost constantly," according to a Pew Research Center report. By 2018, 45 percent reported being online "almost constantly" in a follow up report. Many children and

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

teenagers spend hours throughout the day and night using Defendants Instagram and Snapchat products.

4.    Peer reviewed studies and the available medical science have identified a particular type of social media and electronic device use associated with major mental health injuries, including depression, self-harm, eating disorders, suicide attempts and ideation, dissatisfaction with life, depression, and sleep deprivation. Both large observational studies and experimental results point to the heavy use of Defendants social media products as a cause of increased depression, suicidal ideation, and sleep deprivation among teenagers, particularly teenage girls.

5.    Defendants have invested billions of dollars to intentionally design their products to be addictive and encourage use that they know to be problematic and highly detrimental to their users' mental health. For example, internal, non-public data collected by Instagram and Snapchat reveal large numbers of its users—particularly teenage girls—are engaging in problematic use of its products. Indeed, the problematic use identified in the medical literature is precisely the type of use Defendants have designed their products to encourage through psychological manipulation techniques—sometimes referred to as persuasive design—that is well-recognized to cause all of the hallmarks of clinical addiction.

6.    Plaintiff brings claims of strict liability based upon Defendants' defective design of their social media products that renders such products not reasonably safe for ordinary consumers in general and minor users in particular. It is technologically feasible to design social media products that substantially decrease both the incidence and magnitude of harm to ordinary consumers and minors arising from their foreseeable use of Defendants' products with a negligible increase in production cost.

Social Media Victims
Law Center PLLC
821 Second Avenue, Ste 2100
Seattle WA 98104

7.    Plaintiff also brings claims for strict liability based on Defendants' failure to provide adequate warnings to minor users and their parents of danger of mental, physical, and emotional harms arising from foreseeable use of their social media products. The addictive quality of Defendants' products and their harmful algorithms are not fully known or appreciated by minor users and their parents.

8.    Plaintiff also brings claims for common law negligence arising from Defendants' unreasonably dangerous social media products and their failure to warn of such dangers. Defendants knew, or in the exercise or ordinary care should have known, that their social media products were harmful to a significant percentage of their minor users and failed to re-design their products to ameliorate these harms or warn minor users and their parents of dangers arising out of the foreseeable use of their products. In other words, Defendants intentionally created an attractive nuisance to young children, but failed to provide adequate safeguards from the harmful effects they knew were occurring on their wholly owned and controlled digital premises, which Defendants refer to interchangeably as the "metaverse."

9.    Plaintiff also brings claims under Oregon law prohibiting discrimination on the basis of sex by a place of public accommodation. ORS 659A.403. Defendants violated this statute by targeting M.K. with harmful content, advertising, and recommendations based upon her female gender.

10.    Plaintiff also brings claims under 47 U.S.C. § 1595 based Defendants' financial benefit garnered from knowingly assisting, supporting, facilitating sexual solicitation and exploitation of minor children. Defendants are aware of, and knowingly benefit, from a large number of predatory users who regularly use Defendants' platforms to solicit and groom minor users into sexually compromising situations and lure them into being sexually exploited and

trafficked. Defendants have failed to undertake reasonable efforts to redesign their social media platforms to protect their minor users against such harms.

## II.     PARTIES

11.     Plaintiff BRITTNEY DOFFING is an individual residing in Ashland, Oregon and the mother and custodial parent of her 15-year-old daughter M.K. Plaintiff brings this suit on behalf of herself and on behalf of M.K. pursuant to Fed. R. Civ. P. 17.

12.     Plaintiff BRITTNEY DOFFING has not entered into a User Agreement or other contractual relationship with any of the Defendants herein in connection with M.K.'s use of their social media products. As such, in prosecuting this action Plaintiff is not bound by any arbitration, forum selection, choice of law or class action waiver set forth in said User Agreements

13.     Defendant Meta Platforms, Inc., formerly known as Facebook, Inc., is a Delaware corporation with its principal place of business in Menlo Park, CA. Defendant Meta Platforms owns and operates the Instagram social media platform, an application that is widely available to users throughout the United States.

14.     Defendant Snap, Inc. is a Delaware corporation with its principal place of business in Santa Monica, CA. Defendant Snap owns and operates the Snapchat social media platform, an application that is widely marketed by Snap and available to users throughout the United States.

## III.     JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and Plaintiff and Defendants are residents of different states.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

16.    This Court has specific jurisdicition over Meta and Snap. Inc because these Defendants transact business in the State of Oregon and purposefully avail themselves of the benefits of transacting business in Oregon with Oregon residents; Plaintiff's claims set forth herein arise out of and relate to Defendant's activities in the State of Oregon and purposeful availament of the benefits of transacting business in Oregon with Oregon residents and exercise of personal jurisdiction by this Court comports with traditional notions of fair play and substantial justice.

17.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## IV.    FACTUAL ALLEGATIONS

**A.    Instagram Background**

18.    Instagram is a photo sharing social media application that originally enabled users to post and share photos that could be seen by other users who "follow" the user. A user's followers could "like" and post comments on the photos. Instagram was purchased by Facebook, Inc. for approximately $1B in 2012.

19.    A user's "feed" is a comprised of a series of photos and videos posted by accounts that the user follows, along with advertising and content specifically selected and promoted by Instagram.

20.    Instagram also features a "discover" feature where a user is shown an endless feed of content that is selected by an algorithm designed by Instagram based upon the users' demographics and prior activity in the application.

21.    Users' profiles on Instagram may be public or private. On public profiles, any user is able to view the photos, videos, and other content posted by the user. On private profiles,

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

the users' content may only be viewed by the user's followers, which the user is able to approve. During the relevant period, Instagram profiles were public by default and Instagram allowed all users to message and send follow request to underage users, including Plaintiff M.K.

22.    During the last five years, Instagram has added features designed to increase the time spent by users on their platforms and promoted the use of short videos and temporary posts. The latter are referred to as "Reels" while the former are referred to as Instagram "Stories."

23.    Instagram notifies users through text and email of activity in which they might be interested, which is designed to and does prompt users to open Instagram and be exposed to content selected by Instagram to maximize the length of time and amount of content viewed by the user.

24.    Over time, Instagram has become the most popular photo sharing social media platform amongst teenagers and young adults in the United States with over 57 million users below the age of eighteen, meaning that 72 percent of America's youth use Instagram.

**B.    Snapchat Background**

25.    Snapchat is a photo and short video sharing social media application that allows users to form groups and share posts or "Snaps" that disappear after being viewed by the recipients. Snapchat also features a series of rewards including trophies, streaks, and other signals of social recognition similar to the "likes" metrics available across other platforms. These features are designed to encourage users to share their videos and posts with the public. Users also have an explore feed that displays content created by other users around the world.

26.    Snapchat was founded in 2011 by current president and CEO Evan Spiegel and several co-founders from Stanford University.

Social Media Victims
Law Center PLLC
821 Second Avenue, Ste 2100
Seattle WA 98104

27. In 2014, Snapchat added "Stories" and "Chat" features that allowed users to post longer stories that could be viewed by users outside the user's friends. In 2014, Snapchat also released a feature called Snapcash that allowed users to send money to other users.

28. Snapchat also allows users to enable the sharing of their location, which allows the users followers (and the public for Snaps submitted by the users) to see the user's location on a map.

29. By 2015, Snapchat had over 75 million monthly active users and is considered to be the most popular social media application amongst American teenagers in terms of number of users and time spent using the platform.

**C.    Defendants' Applications Are Products**

30. Both Instagram and Snapchat are products that are designed and manufactured by Meta and Snap, respectively. These products are designed to be used by children and are marketed to children across the United States. Further, Defendants are aware that large numbers of children under the age of 13 use their products despite user terms or "community standards" that purport to restrict use to individuals who are 13 and older.

**D.    Defendants' Business Model is Based on Maximizing User Screen Time**

31. Defendants do not charge their users for downloading or using their application products, but instead receive money from advertisers who pay a premium to target advertisements to specific demographic groups of users in the applications.

32. As such, Defendants generate revenue based upon the total time spent on the application, which directly correlates with the number of advertisements that can be shown to each user.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

33.     Snapchat utilizes unknown and changing rewards that are designed to prompt users to use Snapchat in excessive and dangerous ways. Snap knows or should know that its design has created extreme and addictive behaviors by its largely teenage and young-adult users. Indeed, Snap knowingly or purposefully designed its products to encourage such behaviors.

34.     All the achievements and trophies in Snapchat are unknown to users and users do not find out about the criteria for specific achievements until they obtain or unlock them. This design conforms to well-established principles of operant conditioning wherein intermittent reinforcement provides the most reliable tool to maintain a desired behavior over time.

35.     This design is akin to a slot machine but marketed toward teenage users who are even more susceptible than gambling addicts to the variable reward and reminder system designed by Snap. The system is designed to reward increasingly extreme behavior because users are not actually aware of what actions will unlock the next award.

36.     Instagram, like Snapchat, is designed around a series of design features that do not add to the communication and communication utility of the application, but instead seek to exploit users' susceptibility to persuasive design and unlimited accumulation of unpredictable and uncertain rewards, including "likes" and "followers." In the hands of children, this design is unreasonably dangerous to the mental well-being of underage user's developing minds.

37.     Internal Meta documents identify the potential of reduction in usage by their minor users as an "existential threat" to their business and spend billions of dollars per year marketing their products to minors.

**E.     Defendants Have Designed Complex Algorithms to Addict Teen Users.**

38.     Defendants have intentionally designed their products to maximize users 'screen time, using complex algorithms designed to exploit human psychology and driven by the most

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

advanced computer algorithms and artificial intelligence available to two of the largest technology companies in the world.

39.    Defendants designed and have progressively modified their products to promote problematic and excessive use that they know is indicative of addictive and self-destructive use.

40.    One of these features—present in both Snapchat and Instagram—is the use of complex algorithms to select and promote content that is provided to users in an unlimited and never ending "feed." Defendants are well-aware that algorithm-controlled feeds promote unlimited "scrolling"—a type of use those studies have identified as detrimental to users' mental health – however, this type of use allows Defendants to display more advertisements and obtain more revenue from each individual user.

41.    The addictive nature of Defendants products and the complex and psychologically manipulative design of their algorithms is unknown to ordinary users.

42.    Defendants have knowingly limited Parents ability to monitor and prevent problematic use by their children.

**F.    Minor Users' Incomplete Brain Development Renders Them Particularly Susceptible to Manipulative Algorithms with Diminished Capacity to Eschew Self-Destructive Behaviors and Less Resiliency to Overcome Negative Social Media Influences**

43.    Emerging research shows that the human brain is still developing during adolescence in ways consistent with adolescents demonstrated psychosocial immaturity. Specifically, adolescents' brains are not yet fully developed in regions related to risk evaluation, emotional regulation, and impulse control.

44.    The frontal lobes—and in particular the prefrontal cortex—of the brain play an essential part in higher-order cognitive functions, impulse control and executive decision-making. These regions of the brain are central to the process of planning and decision-making,

COMPLAINT FOR PERSONAL INJURIES - 10

including the evaluation of future consequences and the weighing of risk and reward. They are also essential to the ability to control emotions and inhibit impulses. MRI studies have shown that the prefrontal cortex is one of the last regions of the brain to mature.

45.    During childhood and adolescence, the brain is maturing in at least two major ways. First, the brain undergoes myelination, the process through which the neural pathways connecting different parts of the brain become insulated with white fatty tissue called myelin. Second, during childhood and adolescence, the brain is undergoing "pruning"—the paring away of unused synapses, leading to more efficient neural connections. Through myelination and pruning, the brain's frontal lobes change to help the brain work faster and more efficiently, improving the "executive" functions of the frontal lobes, including impulse control and risk evaluation. This shift in the brain's composition continues throughout adolescence and continues into young adulthood.

46.    In late adolescence, important aspects of brain maturation remain incomplete, particularly those involving the brain's executive functions and the coordinated activity of regions involved in emotion and cognition. As such, the part of the brain that is critical for control of impulses and emotions and mature, considered decision-making is still developing during adolescence, consistent with the demonstrated behavioral and psychosocial immaturity of juveniles.

47.    The algorithms in Defendants' social media products exploit minor users diminished decision-making capacity, impulse control, emotional maturity, and psychological resiliency caused by users' incomplete brain development. Defendants know, or in the exercise of reasonable care should know, that because their minor users' frontal lobes are not fully developed, such users are much more likely to sustain serious physical and psychological harm

Social Media Victims
Law Center PLLC
821 Second Avenue, Ste 2100
Seattle WA 98104

through their social media use than adult users.  Nevertheless, Defendants have failed to design their products with any protections to account for and ameliorate the psychosocial immaturity of their minor users.

**G. Defendants Misrepresent the Addictive Design and Effects of Nature of Instagram and Snapchat.**

48.    During the relevant time period, Defendants stated in public comments that their products are not addictive. Defendants knew or should have known that those statements were untrue.

49.    Neither Instagram or Snapchat warned users or their parents of the addictive and mentally harmful effects that the use of their products was known cause amongst minor users, like Plaintiff M.K.

**H. Plaintiff Expressly Disclaims Any and All Claims Seeking to Hold Defendants Liable as the Publisher or Speaker of Any Content Provided, Posted or Created by Third Parties**

50.    Plaintiff seeks to hold Defendants accountable for their own alleged acts and omissions. Plaintiff's claims arise from Defendants' status as the designer and marketer of dangerously defective social media products, not as the speaker or publisher of third-party content.

51.    Plaintiff alleges that Defendants failed to warn minor users and their parents of known dangers arising from anticipated use of their social media platforms. None of Plaintiff's claims rely on treating Defendants as the publisher or speaker of any third party's words. Plaintiff's claims seek to hold Defendants accountable for their own allegedly wrongful acts and omissions, not for the speech of others or for Defendants good faith attempts to restrict access to objectionable content.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

52.    Plaintiff is not alleging that Defendants are liable for what the third parties said, but for what Defendants did or did not do.

53.    None of Plaintiff's Claims for Relief set forth herein require treating Defendants as a speaker or publisher of content posted by third parties. Rather, Plaintiff seeks to hold Defendants liable for their own speech and their own silence in failing to warn of foreseeable dangers arising from anticipate use of their products. Defendants could manifestly fulfill their legal duty to design reasonably safe social products and furnish adequate warnings of foreseeable dangers arising out of the use of their products without altering, deleting, or modifying the content of a *single* third-party post or communication.

## V.    PLAINTIFF-SPECIFIC ALLEGATIONS

54.    Plaintiff M.K. is a 15-year-old girl who is a heavy user of Instagram and Snapchat.

55.    Plaintiff BRITTNEY DOFFING, worried about the potentially harmful effects of social media, specifically prohibited M.K. from using social media until M.K.'s 14th birthday.

56.    BRITTNEY DOFFING was unaware of the clinically addictive and mentally harmful effects of Instagram and Snapchat.

57.    Shortly upon receiving a smart phone for her 14th birthday in March 2020, M.K. began engaging in addictive and problematic use of Instagram and Snapchat. Prior to March 2020, M.K. used a phone that did not have the ability to download social media applications, although she was able to use text messages and make calls.

58.    Prior to March 2020, M.K. was attending school and passing her classes. Within two weeks of her opening Instagram and Snapchat accounts, M.K. displayed little interest in any

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

activity other than viewing and posting on the Instagram and Snapchat applications. Her academic performance showed a marked decrease due to her obsessive social media use.

59.     Prompted by the addictive design of Defendants' products and the constant notifications that Defendants' applications pushed to M.K.'s phone 24 hours a day, M.K. began getting less and less sleep.

60.     As a proximate result of her addiction to Instagram and Snapchat, M.K. has been hospitalized twice for psychiatric episodes triggered by Doffing's attempts to take away or restrict M.K.'s usage of Instagram and Snapchat.

61.     As a proximate result of her use of Instagram and Snapchat, and specifically due to recommendations and content Defendants selected and showed to M.K., a minor user of Instagram and Snapchat, M.K. subsequently developed an eating disorder and engaged in periodic crash diets followed by binge eating.

62.     Through her use of Instagram and Snapchat, M.K. has been messaged and solicited for sexual exploitive content and acts on numerous occasions by male users of Instagram and Snapchat, who are encouraged to use these platforms to sexually solicit and abuse minors due to Defendants' refusal to verify identity and age for new users.

63.     BRITTNEY DOFFING has recorded and reported these improper sexual solicitations to law enforcement on multiple occasions.

64.     Due to M.K.'s addiction to Instagram and Snapchat, she has run away from home on multiple occasions in order to gain access to and use her multiple Snapchat and Instagram accounts.

65.     Defendants have designed Instagram and Snapchat, including through the use of disappearing or time-limited messaging features, to frustrate and prevent parents like

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

BRITTNEY DOFFING from exercising their rights and duties as parents to monitor and limit their children's use of Instagram and Snapchat.

66.    Defendants have designed Instagram and Snapchat to allow minor users to use, become addicted to, and abuse their products without the consent of the users' parents, like BRITTNEY DOFFING.

67.    Defendants have specifically designed Instagram and Snapchat to be attractive nuisances to underage users but failed to exercise ordinary care owed to underage business invitees to prevent the rampant solicitation of underage girls by anonymous older users who do not disclose their real identities, and mass message underage users with the goal of grooming and sexually exploiting minors.

68.    Defendants not only failed to warn M.K. and BRITTNEY DOFFING of the dangers of addiction, sleep deprivation, and problematic use of their applications, but misrepresented the safety, utility, and non-addictive properties of their products. For example, the head of Instagram testified under oath at a December 8, 2021 Senate Committee hearing that Instagram does not addict its users.

69.    As a result of M.K.'s extensive and problematic use of Instagram and Snapchat, she developed numerous mental health conditions including multiple inpatient psychiatric admissions, an eating disorder, self-harm, and physically and mentally abusive behaviors toward her mother and siblings.

## VI.    PLAINTIFF'S CLAIMS

### COUNT I - STRICT PRODUCT LIABILITY (Design Defect)

70.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 69 as if fully stated herein.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

71.    Under Restatement (Second) of Torts § 402(a), one who sells any product in a defective condition unreasonably dangerous to the user is subject to liability for physical harm thereby caused to the user if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition which it was sold.

72.    Defendants designed, manufactured, marketed, and sold products that were unreasonably dangerous because they were designed to be addictive and detrimental to mental health of children to whom the Defendants knowingly marketed their products.

73.    Defendants' products were unreasonably dangerous because they contained numerous design characteristics that were not necessary for the utility provided to the user but were unreasonably dangerous and implemented by Defendants solely to increase the profits they derived from each additional user.

**A.    Inadequate Safeguards From Harmful and Exploitative Content**

74.    As designed, Snapchat, Instagram and Facebook algorithms are not reasonably safe because they affirmatively direct minor users to harmful and exploitative content while failing to deploy feasible safeguards to protect vulnerable teens from such harmful exposures.  It is feasible to design an algorithm that substantially distinguishes between harmful and innocuous content and protects minor users from being exposed to harmful content without altering, modifying, or deleting any third-party content posted on Defendants' social media products.  The cost of designing Defendants' algorithms to incorporate this safeguard would be negligible while benefit would be high in terms of reducing the quantum of mental and physical harm sustained by minor users and their families.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

75.     Reasonable users (and their parents) would not expect that Defendants' products would direct them to harmful content.

**B.      Failure to Verify Minor Users' Age and Identity**

76.     As designed, Defendants' products are not reasonably safe because they do not provide for adequate age verification by requiring users to document and verify their age and identity.

77.     Adults frequently set up user accounts on Defendants' social media products posing as minors to groom unsuspecting minors to exchange sexually explicit content and images, which frequently progresses to sexual exploitation and trafficking.

78.     Minor users of social media and their parents do not reasonably expect that prurient adults set up fraudulent accounts on Defendants' social media products and pose as minors for malign purposes.

79.     Reasonably accurate age and identify verification is not only feasible but widely deployed by on-line retailers and internet service providers.

80.     The cost of incorporating age and identify verification into Defendants' products would be negligible whereas the benefit of age and identity verification would be a substantial reduction in severe mental health harms, sexual exploitation, and abuse among minor users of Defendants' products.

**C.      Inadequate Parental Control and Monitoring**

81.     Defendants' products are also defective for lack of parental controls, permission, and monitoring capability available on many other devices and applications.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

**D.    Intentional Direction of Minor Users to Harmful and Exploitative Content**

82.    Default "recommendations" communicated to new teenage users, including plaintiff, purposefully steered Plaintiff toward content Defendants knew to be harmful to children of his age and gender.

**E.    Inadequate Protection of Minors from Sexual Exploitation and Abuse**

83.    Defendants' products are not reasonably safe because they do not protect minor users from sexually explicit content and images or report sex offenders to law enforcement or allow users' parents to readily report abusive users to law enforcement.

84.    Parents do not expect their children will use Defendants' products to exchange sexually explicit content and images and minor users do not expect that prurient adults pose as minors for malign purposes or that exchange of such content will be deleterious to their personal safety and emotional health.

85.    Minor users of Defendants' products lack the cognitive ability and life experience to identify on-line grooming behaviors by prurient adults and psychosocial maturity to decline invitations to exchange salacious material.

86.    Defendants' products are unreasonably dangerous and defective as designed because they allow minor children to use "public" profiles, in many cases default "public" profiles, that can be mass messaged by anonymous and semi-anonymous adult users for the purposes of sexual exploitation, and grooming, including the sending of encrypted, disappearing messages and cash rewards through Defendants' integrated design features.

**F.    Design of Addictive Social Media Products**

87.    As designed, Defendants' social media products are addictive to minor users as follows:  When minors use design features such as "likes" it cause their brains release dopamine

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

which creates short term euphoria. However, as soon as dopamine is released, minor users' brains adapt by reducing or "downregulating" the number of dopamine receptors that are stimulated and their euphoria is countered by dejection. In normal stimulatory environments, this dejection abates, and neutrality is restored. However, Defendants' algorithms are designed to exploit users' natural tendency to counteract dejection by going back to the source of pleasure for another dose of euphoria. As this pattern continues over a period of months and the neurological base line to trigger minor users' dopamine responses increases, they continue to use Instagram, not for enjoyment, but simply to feel normal. Once they stop using Instagram, minor users experience the universal symptoms of withdrawal from any addictive substance including anxiety, irritability, insomnia, and craving.

88.    Addictive use of social media by minors is psychologically and neurologically analogous to addiction to internet gaming disorder as described in the American Psychiatric Association's 2013 *Diagnostic and Statistical Manual of Mental Disorders (DSM-5)*, which is used by mental health professionals to diagnose mental disorders.  Gaming addiction is a recognized mental health disorder by the World Health Organization and International Classification of Diseases and is functionally and psychologically equivalent to social media addition.

89.    The diagnostic symptoms of social media addiction among minors are the same as the symptoms of addictive gaming promulgated in DSM 5 and include:

90.    Preoccupation with social media and withdrawal symptoms (sadness, anxiety, irritability) when device is taken away or not possible (sadness, anxiety, irritability).

91.    Tolerance, the need to spend more time using social media to satisfy the urge.

92.    Inability to reduce social media usages, unsuccessful attempts to quit gaming.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

93.     Giving up other activities, loss of interest in previously enjoyed activities due to social media usage.

94.     Continuing to use social media despite problems.

95.     Deceiving family members or others about the amount of time spent on social media.

96.     The use of social media to relieve negative moods, such as guilt or hopelessness; and

97.     Jeopardized school or work performance or relationships due to social media usage.

98.     Defendants' advertising profits are directly tied to the amount of time that its users spend online, and their algorithms are designed to maximize the time users spend using the product by directing them to content that is progressively more and more stimulative. Defendants enhance advertising revenue by maximizing users' time online through a product design that addicts them to the platform.  However, reasonable minor users and their parents do not expect that on-line social media platforms are psychologically and neurologically addictive.

99.     It is feasible to make Defendants' products to report the frequency and duration of their minor users' screen time to their parents without disclosing the content of communications at negligible cost. This would enable parents to track the frequency, time and duration of their minor child's social media, identify and address problems arising from such use, and better exercise their parental rights and responsibilities to limit the types of use that Defendants' own internal research identifies as problematic to users' health and well-being.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

**G.     Inadequate Notification of Parents of Dangerous and Problematic Social Media Usage by Minor Users**

100.   Defendants' products are not reasonably safe as designed because they do not include any safeguards to notify users and their parents of usage that Defendants know to be problematic and likely to cause negative mental health effects to users, including excessive passive use and use disruptive of normal sleep patterns. This design is defective and unreasonable because:

101.   It is reasonable for parents to expect that social media products that actively promote their platforms to minors will undertake reasonable efforts to notify parents when their child's use becomes excessive or occurs during sleep time.  It is feasible for Defendants to design products that identify a significant percentage of its minor users who are using the product more than three hours per day or using it during sleeping hours at negligible cost.

102.   Defendants' products are not reasonably safe as designed because, despite numerous reported instances of child sexual solicitation and exploitation by adult users, Defendants have not undertaken reasonable design changes to protect underage users from this abuse, including notifying parents of underage users when they have been messaged or solicited by an adult user or when a user has sent inappropriate content to minor users.  Defendants' entire business is premised upon collecting and analyzing user data and it is feasible to use Defendants' data and algorithms to identify and restrict improper sexual solicitation, exploitation and abuse by adult users; and

103.   It is reasonable for parents to expect that platforms such as Instagram, which actively promote their services to minors, will undertake reasonable efforts to identify users suffering from mental injury, self-harm, or sexual abuse and implement technological safeguards to notify parents by text, email, or other reasonable means that their child is in danger.

COMPLAINT FOR PERSONAL INJURIES - 21

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

104.    As a result of these dangerous and defective design attributes of Defendants' products, Plaintiff M.K. suffered severe mental harm, leading to physical injury, from her use of Instagram and Snapchat.

105.    As a result of these dangerous and defective design attributes of Defendants' products, Plaintiff M.K. has suffered and continues to suffer serious damages in the form of emotional distress, diagnosed mental health conditions, medical expenses, loss of income and earning capacity, pain and suffering, and reputational harm.

106.    As a result of these dangerous and defective design attributes of Defendants' products, Plaintiff Doffing has suffered loss of consortium, emotional distress, past and future medical expenses, and pain and suffering.

107.    Defendants are further liable to Plaintiff for punitive damages based upon the willful and wanton design of their products that were intentionally marketed and sold to underage users, whom they knew would be seriously harmed through their use of Instagram and Snapchat.

**COUNT II – STRICT PRODUCT LIABILITY (Failure to Warn)**

108.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 99 as if fully stated herein.

109.    Defendants' social media products rely on highly complex and proprietary algorithms that are both undisclosed and unfathomable to ordinary consumers who do not expect that social media platforms are physically and/or psychologically addictive.

110.    The magnitude of harm from addiction to Defendants' products is horrific ranging from simple diversion from academic, athletic, and face-to-face socialization to sleep loss, severe depression, anxiety, self-harm, and suicide.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

111.   The harms resulting from minors' addictive use of social media platforms have been not only well- documented in the professional and scientific literature, but Meta had actual knowledge of such harms.  On information and belief, Snap also has conducted internal studies documenting the addictive quality and harmful effects of its social media products on minor users.

112.   Defendants' products are unreasonably dangerous because they lack any warnings that foreseeable product use can disrupt healthy sleep patterns or specific warnings to parents when their child's product usage exceeds healthy levels or occurs during sleep hours.  Excessive screen time is harmful adolescents' mental health and sleep patterns and emotional well-being. Reasonable and responsible parents are not able to accurately monitor their child's screen time because most adolescents own or can obtain access to mobile devices and engage in social media use outside their parents' presence.

113.   It is feasible for Defendants' products to report the frequency and duration of their minor users' screen time to their parents without disclosing the content of communications at negligible cost, which would enhance parents' ability to track the frequency, time and duration of their minor child's social media use and allow them to identify and address problems arising from such use and to better exercise their rights and responsibilities as parents.

114.   Defendants knew about these harms, knew that users and parents would not be able to safely use their products without warnings, and failed to provide warnings that were adequate to make the products reasonably safe during ordinary and foreseeable use by children.

115.   As a result of Defendants' failure to warn, Plaintiff M.K. suffered severe mental harm, leading to physical injury, from her use of Instagram and Snapchat.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

116.   As a result of Defendants' failure to warn, Plaintiff M.K. has suffered and continues to suffer serious damages in the form of emotional distress, diagnosed mental health conditions, medical expenses, loss of income and earning capacity, pain and suffering, and reputational harm.

117.   As a result of Defendants' failure to warn, Plaintiff Doffing has suffered loss of consortium, emotional distress, past and future medical expenses, and pain and suffering.

118.   Defendants are further liable to Plaintiff for punitive damages based upon their willful and wanton failure to warn of known dangers of their products that were intentionally marketed and sold to teenage users, whom they knew would be seriously harmed through their use of Instagram and Snapchat.

## COUNT III – NEGLIGENCE (Common Law)

119.   Plaintiff realleges each and every allegation contained in paragraphs 1 through 110 as if fully stated herein.

120.   At all relevant times, Defendants had a duty to exercise reasonable care and caution for the safety of individuals using their products, such as Plaintiff M.K.

121.   Defendants owe a heightened duty of care to minor users of their social media products because adolescents' brains are not fully developed, which results in a diminished capacity to make good decisions regarding their social media usages, eschew self-destructive behaviors, and overcome emotional and psychological harm from negative and destructive social media encounters. Defendants intentionally designed and marketed their social media platforms to be both attractive and harmful to underage users, sometimes referred to an "attractive nuisance." Rather than take reasonable precautions to prevent children from harmful and

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

problematic behaviors, Defendant intentionally designed its platforms to attract and addict vulnerable child users.

122.    As California product manufacturers marketing and selling products to residents of Oregon, Defendants owed a duty to exercise ordinary care in the manufacture, marketing, and sale of their products, including a duty to warn minor users and their parents of hazards that Defendants knew to be present, but not obvious, to underage users and their parents.

123.    As business owners, Defendants owe their users who visit Defendants' social media platform and from whom Defendants derive billions of dollars per year in advertising revenue a duty of ordinary care substantially similar to that owed by physical business owners to their business invitees. Defendant Meta has acknowledged that it considers itself to be a digital premises owner by changing its name to Meta, in reference to the "metaverse," and likening its platforms to physical places where it intends for its users to visit for Meta's financial gain.

124.    Defendants were negligent, grossly negligent, reckless and/or careless in that they failed to exercise ordinary care and caution for the safety of underage users, like M.K., using their Instagram and Snapchat products.

125.    Defendants were negligent in failing to conduct adequate testing and failing to allow independent academic researchers to adequately study the effects of their products and levels of problematic use amongst teenage users. Defendants' have extensive internal research indicating that their products are harmful, cause extensive mental harm and that minor users are engaging in problematic and addictive use that their parents are helpless to monitor and prevent.

126.    Defendants were negligent in failing to provide adequate warnings about the dangers associated with the use of social media products and in failing to advise users and their parents about how and when to safely use their social media platforms and features.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

127.    Defendants were negligent in failing to fully assess, investigate, and restrict the use of Instagram and Snapchat by adults to sexually solicit, abuse, manipulate, and exploit minor users of their Instagram and Snapchat products.

128.    Defendants were negligent in failing to provide users and parents the tools to ensure their social media products were used in a limited and safe manner by underage users.

129.    Defendants were negligent as digital premises owners who knew or should have known that (1) underage users would be attracted to visit their Instagram and Snapchat websites and mobile platforms, (2) underage users were at heightened risk of harm from content, features, and actions by third-arty users that existed on Instagram and Snapchat, (3) Defendants created and/or maintained the dangerous features or conditions that posed a risk to children, and (4) Defendants failed to take reasonable precautions to prevent children from accessing their digital premises, remediate the unsafe conditions, and/or adequately warn minor users and their parents about the dangerous conditions they knew or should have known existed on Instagram and Snapchat.

130.    As a result of Defendants' negligence, Plaintiff M.K. suffered severe mental harm, leading to physical injury, from her use of and exposure to Instagram and Snapchat.

131.    As a result of Defendants' negligence, Plaintiff M.K. has suffered and continues to suffer serious damages in the form of emotional distress, diagnosed mental health conditions, medical expenses, loss of income and earning capacity, pain and suffering, and reputational harm.

132.    As a result of Defendants' negligence, Brittney Doffing has suffered loss of consortium, emotional distress, past and future medical expenses, and pain and suffering.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

133.    Defendants are further liable to Plaintiff for punitive damages based upon their willful and wanton conduct toward M.K. and other underage users whom they knew would be seriously harmed through the use of Instagram and Snapchat.

## VII.    COUNT IV – SEXUAL DISCRIMINATION BY A PLACE OF PUBLIC ACCOMMODATION (ORS 659A.403) (as to M.K. only)

134.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 125 as if fully stated herein.

135.    Defendants Instagram and Snapchat social media platforms are places of public accommodation under Oregon law, ORS 659A.400.

136.    Defendants engaged in sexual discrimination toward users, including Plaintiff M.K., by using her gender (which Instagram and Snapchat request upon the creation of an account) to direct recommendations of accounts to follow and different and materially harmful content to female users, including content promoting unhealthy dieting, fitness, and other content proven to cause body dysmorphia, eating disorders, depression, and anxiety amongst teenage users.

137.    Plaintiff subjectively perceived discrimination to M.K. in the nature and type of services provided by Defendants' platform to M.K. due to her female gender.

138.    Defendants intentionally designed and implemented their Instagram and Snapchat services in way that resulted in distinction, discrimination, or restriction toward M.K. and other teenage female users on account or their sex and/or gender.

139.    Based upon M.K.'s female gender and appearance, Defendants further selected and provided posts, videos, and pictures to adult male users who, through their prior activity on the platforms, were directed toward content posed by underage female users. As a result of Defendants' discriminatory treatment and usage of M.K.'s minor female-related content (in order

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

to profit by driving user engagement and views at any cost), multiple adult male users improperly and illegally messaged and solicited M.K. for the purposes of sexual abuse, exploitation, and sexually explicit material involving a minor child. In orders words, Defendants knowingly operated a matching service that profited from matching underage teenage users with adult sexual predators.

140.    As a result of Defendants' sexual discrimination, Plaintiff M.K. suffered severe mental harm, leading to physical injury, from her use of and exposure to Instagram and Snapchat.

141.    As a result of Defendants' sexual discrimination, Plaintiff M.K. has suffered and continues to suffer serious damages in the form of emotional distress, diagnosed mental health conditions, medical expenses, loss of income and earning capacity, pain and suffering, and reputational harm.

142.    Pursuant to ORS 659A.885(8), Plaintiff M.K. is entitled to full compensatory and punitive damages against Defendants as a result of their intentional and unlawful sexual discrimination. Defendants are further jointly and severally liable for punitive damages and attorneys' fees and costs based upon their knowing, intentional, willful, and wanton gender-based discrimination toward M.K. and other teenage users whom they knew would be seriously harmed through unlawful sexual discrimination on Instagram and Snapchat.

## VIII.   COUNT V – VIOLATION OF 47 U.S.C. § 1595

143.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 134 as if fully stated herein.

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

144.    Plaintiff also bring claims under 47 U.S.C. § 1595 based Defendants' financial benefit garnered from knowingly assisting, supporting, facilitating sexual solicitation and exploitation of minor children.

145.    Defendants are aware of, and knowingly benefit, from a large number of predatory users who regularly use Defendants' platforms to solicit and groom minor users into sexually compromising situations and lure them into being sexually exploited and trafficked.

146.    Defendants have failed to undertake reasonable efforts to redesign their social media platforms to protect their minor users against such harms.

147.    As a result of Defendants' violations of 47 U.S.C. § 1595, Plaintiff M.K. suffered severe mental harm, leading to physical injury, from sexual exploitation and solicitation directed toward her through Instagram and Snapchat.

148.    As a result of Defendants' violations of 47 U.S.C. § 1595, Plaintiff M.K. has suffered and continues to suffer serious damages in the form of emotional distress, diagnosed mental health conditions, medical expenses, loss of income and earning capacity, pain and suffering, and reputational harm.

149.    As a result of Defendants' violations of 47 U.S.C. § 1595, Brittney Doffing has suffered loss of consortium, emotional distress, past and future medical expenses, and pain and suffering.

150.    As a result of Defendants' violations of 47 U.S.C. § 1595, Plaintiff is entitled to full compensatory and punitive damages against Defendants for the mental and physical injuries suffered by M.K. and Doffing. Defendants are further jointly and severally liable to Plaintiff for punitive damages and attorneys' fees and costs based upon their knowing, intentional, willful, and wanton conduct toward M.K. and other teenage users whom they knew were being seriously

SOCIAL MEDIA VICTIMS
LAW CENTER PLLC
821 SECOND AVENUE, STE 2100
SEATTLE WA 98104

harmed through improper solicitation and exploitation of a sexual nature through Instagram and Snapchat.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant for monetary damages and/or injunctive relief for the following harm:

1. Past physical and mental pain and suffering of M.K., in an amount to be more readily ascertained at the time and place set for trial;

2. Loss of enjoyment of life, in an amount to be more readily ascertained at the time and place set for trial;

3. Past and future medical care expenses for the care and treatment of the injuries sustained by M.K., in an amount to be more readily ascertained at the time and place set for trial.

4. Past and future impairment to capacity to perform everyday activities;

5. Plaintiff's pecuniary loss and loss of M.K.'s services, comfort, care, society and companionship to Doffing;

6. Loss of future income and earning capacity of M.K.;

7. Punitive damages;

8. For injunctive relief ordering Defendants to remedy the unreasonably dangerous algorithms in their social media products and provide warnings to minor users and their parents that Defendants 'social media products are addictive and pose a clear and present danger to unsuspecting minors.

COMPLAINT FOR PERSONAL INJURIES - 30

9.  For the reasonable costs and attorney and expert/consultant fees incurred in

    prosecuting this action; and

10. For such other and further relief as this Court deems just and equitable.


DATED this 20th day of January 2022

                        SOCIAL MEDIA VICTIMS LAW CENTER PLLC


                        */s/ Matthew Bermgan*
                        MATTHEW P. BERGMAN, OSB No. 8943351
                        821 2nd Avenue, Suite 2100
                        Seattle, WA 98104
                        Tel. 206-741-4862
                        Email: matt@socialmediavictims.org